OCEAN MILLS (PEARL v.). See Case No. 10,876.

OCEAN NAT. BANK (SECOND NAT. BANK v.). See Case No. 12,602.

## Case No. 10,408a.

### The OCEAN QUEEN.[1]

District Court, S. D. New York. May 16, 1864.[2]

COLLISION—STEAMER AND SCHOONER—NEGLIGENCE.

[The schooner John L. Darling, bound from Baltimore to Providence, sailing wing and wing, headed N. E. by N., and going at the rate of four miles per hour, when about eight miles south of Barnegat light, discovered the lights of the steamer Ocean Queen, headed S. by W., and going at the rate of nine miles per hour. The steamer discovered the schooner on her starboard bow at the distance of a mile or more, and ported her helm to pass, but did not slow her engines. The schooner held her course until a collision became inevitable, when, in the confusion, her bow fell off to the eastward, and came lightly into contact with that of the steamer. Her stern swung round under the latter's quarter, and was cut down to the water's edge by the paddle wheels, which had been reversed. Held, that the steamer was at fault in porting and in not slowing her engines on first discovering the schooner, and was liable for the damage to the latter.]

[This was a libel in rem by Seth Adams, Jr., against the steamer Ocean Queen, Cornelius Vanderbilt, claimant, for damages suffered by the schooner John L. Darling in a collision.]

Choate & Donahue, for libelant.
Clark & Rapallo, for claimant.

SHIPMAN, District Judge. This was a libel filed by the owners of the schooner John L. Darling to recover the damages occasioned to her and her cargo by a collision with the Ocean Queen, which occurred on the night of January 12, 1863, some seven or eight miles southeast of Barnegat light. The schooner was bound from Baltimore to Providence, with a cargo of corn, flour, and feed. The steamer was bound from New York down the coast, with freight and passengers. The night was fair, the wind was light, and about southwest. For some time before the collision the schooner had been sailing wing and wing, heading, until she discovered the light of the Ocean Queen, N. E. by N., and going about four miles an hour. She had a light set under her bowsprit. The steamer, until she discovered the schooner's light, was heading S. by W., going about nine miles an hour. She had all her lights burning and was seen by the schooner some twenty or thirty minutes before the collision, and some time before she discovered the schooner. The master and mate of the schooner, and the man at the wheel, all testified that their vessel did not change her course before the vessels came together. But all the witnesses on both vessels agreed that when they came together, their heads both pointed in an easterly direction, and that there was no severe blow, their hulls hardly coming in contact. The steamer had very little headway on, her engine having been reversed. They came

1 [Not previously reported.]
2 [Affirmed in Case No. 10,410.]

lightly together forward, catching by the rigging so that no damage was done to the schooner's hull till her stern swung round under the steamer's guards, and was cut down nearly to the water, probably by the paddle wheel.

HELD BY THE COURT: That these vessels were approaching each other on tracks which, if continued, would bring them into proximity, and the well-established rule required that the schooner should keep her course, and leave the steamer to clear her as she thought best. That as at the moment of the collision the vessels were pointing in the same direction, it is incredible that the schooner's bow should not have fallen off to the eastward. Otherwise the steamer must have gone down to west of the schooner, and come up alongside of her bearing N. E. by N., which would be equivalent to supposing those on the steamer to be lunatics. That the more rational theory is that the schooner's bow fell off to the eastward during the alarm which seized her crew when they saw that a collision was inevitable, and that as the steamer was also swinging, the vessels came together, both heading, probably, S. of E. That on the evidence the schooner held her course until the collision became inevitable. That the stoppage of the steamer's engine by the master when he first found that the vessels were near each other, was most proper, and probably saved her from striking the schooner at full speed. The officer in charge of her deck was either ignorant of the schooner's position, or he grossly misapprehended his duty. If he did know her position, he ought to have stopped his engine earlier. That on the statement of the first and second officers of the steamer, viz., that the schooner was discovered some seven to twelve minutes before the collision, heading in a northeasterly direction, a little on the starboard bow, the vessels then being a mile or a mile and a half apart, the second officer should not have starboarded his wheel as he did unless he was well assured that by so doing he could give the schooner a wide berth, and that by attempting the manoeuvre, he took the peril on his own ship. If he had ported his wheel, the collision would not have taken place; but the only prudent course was for him instantly to have checked the speed of his vessel. That under such circumstances, with a vessel so near in the night time, with her course not exactly known, he should have checked the speed of his boat, or have been sure of the effect of any manoeuvre before he ventured upon it. Had he put his wheel hard a-port instead of a-starboard, he would have undoubtedly cleared the schooner. But the court does not decide that even that would have been a prudent manoeuvre, without first, or at the same instant, slowing her engine. That the schooner held to the rule by keeping her course until the crew was thrown into confusion by the impending danger, and that when the second officer of the steamer starboarded his wheel, without checking her speed, he committed an error, for which she is liable.

Decree for libelant, with a reference.

[NOTE. Upon the coming in of the master's report, claimants filed certain exceptions, which were sustained, and the report referred for correction. Case No. 10,409. An appeal was subsequently taken to the circuit court, where the decree of this court in favor of the libelant was affirmed. Id. 10,410.

[Subsequently claimant applied in the circuit court for an order that a commission issue to examine certain witnesses whose depositions might be of value to the claimant on an appeal which he had taken to the supreme court. The motion was denied. Id. 10,411.]